IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

JOHN CYRIL LAPID
BUENAVENTURA,

            Petitioner,

vs.

JERRY BURT, Warden,

            Respondent.

No. C07-0034

**REPORT AND RECOMMENDATION**

---

**TABLE OF CONTENTS**

I.     **INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    **PROCEDURAL BACKGROUND**. . . . . . . . . . . . . . . . . . . . 3
     *A.*    *Pre-Trial and Trial Matters*. . . . . . . . . . . . . . . . . . . . . 3
     *B.*    *Direct Appeal*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     *C.*    *State Post-Conviction Relief*. . . . . . . . . . . . . . . . . . . 4
     *D.*    *Petition for a Writ of Habeas Corpus*. . . . . . . . . . . . . 5

III.   **FACTUAL BACKGROUND**. . . . . . . . . . . . . . . . . . . . . . . 5

IV.   **STANDARDS OF REVIEW**. . . . . . . . . . . . . . . . . . . . . . 8
     *A.*    *Standard of Review under 28 U.S.C. § 2254(d)*. . . . . 8
          *1.*    *Requirements under 28 U.S.C. § 2254(d)(1)*. . . . . . . . . . . 9
          *2.*    *Requirements under 28 U.S.C. § 2254(d)(2)*. . . . . . . . . . 11
     *B.*    *Exhaustion Requirement*. . . . . . . . . . . . . . . . . . . . . 12
     *C.*    *Ineffective Assistance of Counsel*. . . . . . . . . . . . . . . 15

V.    **DISCUSSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     *A.*    *The Motion to Suppress*. . . . . . . . . . . . . . . . . . . . . 16
          *1.*    *Did the Failure to Notify Buenaventura of his Right to Consular Notification Violate his Sixth Amendment Right to Counsel?*. . . . . . . . . . . . . . . . . . 17

    *a.*  *Standard of Review.* . . . . . . . . . . . . . . . . . . . . . 17
    *b.*  *The Merits.* . . . . . . . . . . . . . . . . . . . . . . . . . 17
   **2.** ***Did the Failure to Notify Buenaventura of his Right to Consular Notification Make his Statements Involuntary Under the Fifth Amendment?.*** . . . . . . . . . . . . . . . . 20
    *a.*  *Standard of Review.* . . . . . . . . . . . . . . . . . . . . 20
    *b.*  *The Merits.* . . . . . . . . . . . . . . . . . . . . . . . . . 21
   **3.** ***Was Buenaventura Denied Effective Assistance of Appellate Counsel?.*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
 **B.** **Sufficiency of the Evidence.** . . . . . . . . . . . . . . . . . . . . . . 25
   **1.** ***Was There Enough Evidence to Corroborate Buenaventura's Statements?.*** . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    *a.*  *Standard of Review.* . . . . . . . . . . . . . . . . . . . . 25
    *b.*  *The Merits.* . . . . . . . . . . . . . . . . . . . . . . . . . 26
    *c.*  *Ineffective Assistance of Counsel.* . . . . . . . . . . . . . 27
   **2.** ***Did the State Submit Sufficient Evidence of Premeditation or Malice Aforethought to Support a Verdict of Murder?.*** . . . . . 28
    *a.*  *Standard of Review.* . . . . . . . . . . . . . . . . . . . . 28
    *b.*  *The Merits.* . . . . . . . . . . . . . . . . . . . . . . . . . 28
      *(1)*  *Premeditation.* . . . . . . . . . . . . . . . . . . . 29
      *(2)*  *Malice Aforethought.* . . . . . . . . . . . . . . . . 30
 **C.** **Ineffective Assistance of Appellate Counsel--Exclusion of Harassment and Vandalism Evidence.** . . . . . . . . . . . . . . . . . 32
   **1.** ***Exhaustion/Procedural Default.*** . . . . . . . . . . . . . . . . . 33
   **2.** ***Was Buenaventura Denied Effective Assistance of Appellate Counsel when Appellate Counsel Failed to Frame the Exclusion of Evidence Issue as a Due Process Issue?.*** . . . . . 34
 **D.** **Ineffective Assistance of Counsel--Failure to Investigate.** . . . . . . . . 36

**VI.** **CERTIFICATE OF APPEALABILITY.** . . . . . . . . . . . . . . . . . . . . . 38

**VII.** **CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

**VIII.** **RECOMMENDATION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

## I. INTRODUCTION

On December 8, 2006, Petitioner John Cyril Lapid Buenaventura ("Buenaventura"),

filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United

States District Court for the Southern District of Iowa. On April 17, 2007, the Southern District of Iowa transferred the petition to the United States District Court for the Northern District of Iowa because venue was improper.[1] Buenaventura's petition was docketed in the Northern District of Iowa on May 29, 2007.[2] In his petition, Buenaventura challenges the legality of his conviction for first degree murder.

On July 8, 2008, Chief Judge Linda R. Reade referred this matter to the undersigned Magistrate Judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). This matter is before the Court on Buenaventura's brief regarding his petition for a writ of habeas corpus (docket number 13) and Respondent's brief (docket number 16).

## II. PROCEDURAL BACKGROUND

### A. Pre-Trial and Trial Matters

On March 21, 2001, Buenaventura was charged by trial information in the Iowa District Court for Linn County ("Iowa District Court") with first-degree murder in violation of Iowa Code sections 707.1, 707.2, and 708.4 (1999). On October 11, 2001, Buenaventura filed a motion to suppress statements. Buenaventura asserted that the statements he made in two interviews with the police were inadmissible because they were obtained in violation of his rights under Article 36 of the Vienna Convention and the statements were not voluntary. On November 19, 2001, a hearing was held on Buenaventura's motion to suppress. On November 29, 2001, the Iowa District Court denied Buenaventura's motion to suppress. On December 10, 2001, Buenaventura proceeded to trial. On December 17, 2001, the jury found Buenaventura guilty of first-

---

[1] See Initial Review Order (docket number 1-2). The Southern District of Iowa found venue improper because Buenaventura was convicted in the Iowa District Court for Linn County and is an inmate in the Anamosa State Penitentiary in Anamosa, Iowa, both of which are in the Northern District of Iowa. *Id.*; *see also* 28 U.S.C. § 2241(d) (explaining jurisdiction for an application for a writ of habeas corpus).

[2] *See* Buenaventura's Petition (docket number 5).

degree murder. On March 8, 2002, the Iowa District Court sentenced Buenaventura to life in prison.

## B. Direct Appeal

On March 12, 2002, Buenaventura filed a notice of appeal. On appeal, Buenaventura argued that: (1) the trial court erred in failing to suppress his statements to the police because they were obtained in violation of the Vienna Convention and, as a consequence, were not voluntary; (2) there was insufficient evidence of premeditation and malice aforethought to support the trial court's submission of murder charges to the jury; (3) the trial erred in refusing to admit evidence of incidents of vandalism and harassment experienced by the victim in the months prior to her death; and (4) he was denied effective assistance of counsel because his trial counsel did not adequately investigate the case and failed to file a motion for new trial based on an allegation that the verdict was not supported by the weight of the evidence. On April 2, 2003, the Iowa Supreme Court affirmed Buenaventura's first-degree murder conviction. *See State v. Buenaventura*, 660 N.W.2d 38 (Iowa 2003). The Iowa Supreme Court preserved Buenaventura's ineffective assistance of counsel claim for a possible post-conviction relief action. *Id*. at 52. Procedendo issued on April 29, 2003.

## C. State Post-Conviction Relief

On April 7, 2004, Buenaventura filed an application for post-conviction relief pursuant to Iowa Code chapter 822 in the Iowa District Court. In his application for post-conviction relief, Buenaventura argued that he was denied effective assistance of appellate counsel regarding: (1) suppression of his statements to police, (2) the trial court's exclusion of evidence, and (3) the presentation of his insufficiency of evidence claim. Buenaventura also argued that he was denied effective assistance of trial counsel in the investigation of his case. On August 18, 2005, the Iowa District Court denied Buenaventura's application.

On September 7, 2005, Buenaventura filed a notice of appeal. On August 23, 2006, the Iowa Court of Appeals affirmed the denial of Buenaventura's application for post-conviction relief. *See Buenaventura v. State*, No. 05-1493, 2006 WL 2419194 (Iowa Ct. App. 2006). On November 7, 2006, the Iowa Supreme Court denied Buenaventura's request for further review of the Iowa Court of Appeals decision. Procedendo issued on November 16, 2006.

### D. *Petition for a Writ of Habeas Corpus*

On May 29, 2007, Buenaventura filed the instant petition for a writ of habeas corpus. In his petition, Buenaventura asserts the following grounds as a basis for relief under 28 U.S.C. § 2254:

> **Ground One**: [Buenaventura] was denied [effective] assistance of appellate counsel regarding suppression of his statement to police, by said counsel not arguing on direct appeal that the District Court erred by denying a Motion to Suppress Petitioner's involuntary statement. . . .

> **Ground Two**: [Buenaventura] was denied effective assistance of appellate counsel regarding the District Court's exclusion of evidence pertaining to previous instances of harassment and vandalism of the victim at trial. . . .

> **Ground Three**: [Buenaventura] was denied effective assistance of appellate counsel in not presenting the issue of the sufficiency of the evidence on direct appeal.

> **Ground Four**: [Buenaventura] was denied the effective assistance of counsel in investigating this case.

(*See* Buenaventura's Petition at 4-6.) On July 30, 2007, Respondent filed an answer to the petition. On October 12, 2007, Buenaventura filed a brief on the merits. On November 13, 2007, Respondent filed a responsive brief.

### III. *FACTUAL BACKGROUND*

Buenaventura is a citizen of the Philippines. In March 2001, he was living in Cedar Rapids, Iowa with his wife Shirley Buenaventura ("Shirley"), their daughter Mary Jane,

and his wife's sister, Sally Malacas ("Sally"). On March 9, 2001, after returning home from a night shift at work, Shirley discovered that Sally was missing. She organized a small group of friends to search for Sally. Buenaventura did not assist in the search, but instead rented a carpet cleaner and cleaned the carpets in the apartment. On March 11, 2001, a friend found Sally's body in a utility closet in the Buenaventuras' apartment complex. Sally died of brain damage after suffering a severe beating. In their investigation of the Buenaventuras' apartment, the police investigators found paperwork concerning Buenaventura's rental of a Stanley carpet cleaner the day after Sally disappeared. The investigators also discovered blood stains consistent with Sally's blood on the underside of the carpet and soaked into the pad beneath the carpet in her bedroom. Neighbors also reported to investigators that they heard a man and a woman yelling at around 2:30 a.m. on March 9, 2001.

Police detectives interviewed Buenaventura on March 11, 2001, after the discovery of Sally's body, and again on March 15, 2001, after Sally's funeral. The detectives knew that Buenaventura was a citizen of the Philippines. They read him his *Miranda* rights at both interviews, but neglected to inform him that, under Article 36 of the Vienna Convention, he had the right to inform the Philippine consulate that he was being detained.[3] At both interviews, Buenaventura signed a waiver of his *Miranda* rights, although he did request an attorney at the end of the first interview, after which the detectives sent him home. On the waiver form he signed at the second interview,

---

[3] Article 36 of the Vienna Convention provides in pertinent part:

> if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or custody pending trial or is detained in any other manner.

(Vienna Convention on Consular Relations art. 36, Apr. 24, 1963, 21 U.S.T. 79, 100-101.)

Buenaventura handwrote: "I have changed my mind about having an attorney. I don't wish to have an attorney."[4]

During his interviews, Buenaventura initially claimed that he knew nothing about Sally's disappearance and death. He claimed that he rented the carpet cleaner on March 9, 2001, to remove stains that his daughter had made on the carpet. However, during his second interview, on March 15, 2001, when the detectives confronted Buenaventura with the fact that they found blood in his vacuum cleaner, he claimed that he killed Sally with twelve blows to her head. Upon further questioning, Buenaventura quickly changed his story and returned to claiming that he did not kill Sally.

Later in the interview, Buenaventura asked to speak with the pastor from Shirley and Sally's Baptist church. The pastor agreed to speak with Buenaventura and came to the police station to meet with him. The pastor informed Buenaventura that their conversation would not be confidential or privileged. The pastor urged Buenaventura to retain the services of an attorney. Buenaventura and the pastor spoke for approximately one hour.

After speaking with the pastor, Buenaventura decided to issue a written statement to the police.[5] According to Buenaventura, on the evening of March 8, 2001, he invited two men he did not know into his apartment to smoke marijuana with him. Buenaventura claimed that this upset Sally and she left the apartment. When Buenaventura finished smoking his marijuana cigarettes, he told the men that he wanted to go to bed. He told the men goodbye and they left. Buenaventura claims that he woke up about 4:00 to 4:30 a.m., and checked to see if Sally was in the apartment. Buenaventura found "a lot of blood on the carpet in Sally's room."[6] Buenaventura stated:

---

[4] *See* Respondent's Habeas Appendix (docket number 16-2) at 47.

[5] *Id.* at 49-50 (Buenaventura's typed and signed statement to the Cedar Rapids Police Department).

[6] *Id.* at 49.

Because of the blood I knew Sally was dead and I felt that it was my fault.

I cleaned up the blood using the throw rugs with water and powder detergent. . . . Later in the afternoon I used the vacuum cleaner to clean the blood up some more. After that I rented the rug doctor and cleaned the blood some more.

I didn't tell anybody about Sally or the blood because it's my fault. I took the vacuum cleaner bag off the vacuum and threw it in the dumpster behind my apartment building. I threw the rug doctor detergent bottle in the same dumpster along with the vacuum cleaner bag. I poured the used rug doctor liquid either in the bathroom sink or the bathtub.

(*See* Respondent's Habeas Appendix at 49-50.) After signing the statement, Buenaventura was arrested and charged with first-degree murder. On March 15, 2001, the police informed the Philippine consulate that they had arrested Buenaventura.[7]

## IV. STANDARDS OF REVIEW

### A. Standard of Review under 28 U.S.C. § 2254(d)

"A state prisoner may seek a writ of habeas corpus in federal court if his [or her] confinement violates the federal Constitution or federal law." *Weaver v. Bowersox*, 241 F.3d 1024, 1029 (8th Cir. 2001) (citing 28 U.S.C. § 2254(a)). "Federal courts are 'bound by the AEDPA[8] to exercise only limited and deferential review of underlying state court decisions' in habeas corpus cases." *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004) (quoting *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004)); *see also* 28 U.S.C. § 2254.[9] Federal habeas corpus relief may only be granted if one or both of two

---

[7] *See* Respondent's Habeas Appendix at 51 (Suggested Fax Sheet for Notifying Consular Officers of Arrests or Detentions).

[8] AEDPA is an acronym for the Antiterrorism and Effective Death Penalty Act.

[9] AEDPA amended the federal habeas corpus statute, 28 U.S.C. § 2254, in 1996.
(continued...)

conditions is satisfied. *Ryan*, 387 F.3d at 790. These two conditions are set forth in 28 U.S.C. § 2254(d); which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, "[28 U.S.C. §] 2254(d) distinguishes between two types of erroneous decisions—those of law and those of fact—and treats each in separate subparagraphs." *Weaver*, 241 F.3d at 1029. Claims of legal error are governed by the first subparagraph, and claims of factual error fall within the second subparagraph. *Id.* at 1029-30.

### 1. Requirements under 28 U.S.C. § 2254(d)(1)

"A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S. Ct. 7, 157 L. Ed. 2d 263 (2003) (per curiam) (quoting

---

[9](...continued)

*See Williams v. Taylor*, 529 U.S. 362, 399, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The amendment "placed a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners." *Id.*; *see also Bell v. Cone*, 535 U.S. 685, 693, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) ("The [AEDPA] of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law.").

28 U.S.C. § 2254(d)(1)).  The Supreme Court's opinion in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), explains the meaning of those statutory concepts and the degree of deference that must be afforded to state court determinations on the merits.  *See Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006) (discussing *Williams*); *Siers v. Weber*, 259 F.3d 969, 972-73 (8th Cir. 2001) (same).

Under *Williams*, a state court decision can be "contrary to" Supreme Court precedent in one of two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]."  *Williams*, 529 U.S. at 405-06.  Further, "the [statutory] phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Id.* at 412.

An "unreasonable application" of Supreme Court precedent can also arise in one of two ways.  The Supreme Court explained:

> First, a state-court decision involves an unreasonable application of [the Supreme Court's] precedent if the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of [the Supreme Court's] precedent if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407 (citation omitted).  Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involving an unreasonable application of . . . clearly established federal law.'"  *Id.* at 407-08; *see also Rompilla v. Beard*, 545 U.S.

374, 380, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005) (citations omitted) (discussing the "unreasonable application" prong of *Williams*); *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (citations omitted) (same); *Bucklew*, 436 F.3d at 1016 (citations omitted) (same); *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999) ("An 'unreasonable application' is one that, 'evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.' *Long v. Humphrey*, 184 F.3d 758, [760] (8th Cir. 1999)."). Additionally,

> [u]nder [28 U.S.C.] § 2254(d)(1)'s "unreasonable application" clause, . . . a federal habeas [corpus] court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be *unreasonable*.

*Williams*, 529 U.S. at 411 (emphasis added).

Applying these standards to the present case, the court's inquiry must be whether the Iowa courts reached a decision contrary to that reached by the Supreme Court on a question of law, or alternatively, whether the Iowa courts correctly identified the applicable principles of federal law and then unreasonably applied that law to the facts of Buenaventura's claims. *See, e.g. Rousan v. Roper*, 436 F.3d 951, 955-56 (8th Cir. 2006) (discussing the applicable standards); *Bucklew*, 436 F.3d at 1016 (same); *Siers*, 259 F.3d at 973 (same).

## 2. *Requirements under 28 U.S.C. § 2254(d)(2)*

Federal habeas corpus relief "may be granted on a claim adjudicated in state court if the state court proceeding 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Beck v. Bowersox*, 257 F.3d 900, 901 (8th Cir. 2001) (quoting 28 U.S.C. § 2254(d)(2)). The state court findings of fact are presumed to be correct. *Id.* (citing 28 U.S.C.

§ 2254(e)(1)).[10] The burden is on the petitioner to rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Accordingly, the court's review presumes that the Iowa courts found the facts correctly unless Buenaventura rebuts that presumption with clear and convincing evidence. *See id.*; *see also Middleton v. Roper*, 455 F.3d 838, 845 (8th Cir. 2006) ("[The court] bestow[s] a presumption of correctness on the factual findings of the state courts, and absent procedural error, [the court] may set such findings aside only if they are not fairly supported by the record." (quotation and citation omitted)); *Weaver*, 241 F.3d at 1030 ("[O]n habeas [corpus] review, we accord state trial courts broad latitude in determining questions of fact by virtue of the statutory presumption in favor of state court fact-findings."). "It bears repeating that even erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver*, 241 F.3d at 1030.

### B. Exhaustion Requirement

A petitioner, before obtaining federal habeas corpus review of his or her state confinement, must first "exhaust" his or her federal claims in the appropriate state forum. 28 U.S.C. § 2254(b)(1);[11] *see also Coleman v. Thompson*, 501 U.S. 722, 731, 111 S. Ct.

---

[10] 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

[11] 28 U.S.C. § 2254(b)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
> (A) the applicant has exhausted the remedies available in the courts of the State, or
> (B)     (i) there is an absence of available State corrective

(continued...)

2546, 115 L. Ed. 2d 640 (1991) (citations omitted) ("[A] state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."); *Clay v. Norris*, 485 F.3d 1037, 1039 (8th Cir. 2007) (same, quoting *Coleman*). A petitioner has exhausted his or her state remedies when he or she has provided the highest state court with a full and fair opportunity to consider all the claims before presenting them to the federal court. *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986); *Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 276, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); *Miller v. Lock*, 108 F.3d 868, 871 (8th Cir. 1997); *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993); *McDougald v. Lockhart*, 942 F.2d 508, 510 (8th Cir. 1991); *see also* 28 U.S.C. § 2254(c).[12] In Iowa, exhaustion requires a petitioner to seek discretionary review from the Iowa Supreme Court after the Iowa Court of Appeals rejects an appeal argument. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999) (concluding that the exhaustion doctrine requires a petitioner to seek discretionary review when that review is part of the ordinary appellate review procedure) (abrogating *Dolny v. Erickson*, 32 F.3d 381 (8th Cir. 1994)); *see also Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004) (reiterating that a petitioner "must 'fairly present' his [or her] claim in each appropriate state court (including

---

[11] (...continued)
process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

[12] 28 U.S.C. § 2254(c) provides:
An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented.

a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.").

In order to satisfy the fair presentment component of the exhaustion requirement, a petitioner must: "'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" *Middleton*, 455 F.3d at 855 (quoting *Abdullah v. Groose*, 75 F.3d 408, 412 (8th Cir. 1996)); *see also Ashker*, 5 F.3d at 1179. A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the applicant's federal habeas corpus application have been properly raised in his or her state court proceedings. *Keithley v. Hopkins*, 43 F.3d 1216, 1217 (8th Cir. 1995); *Flieger v. Delo*, 16 F.3d 878, 884 (8th Cir. 1994); *see also Harless*, 459 U.S. at 6 ("[T]he habeas petitioner must have 'fairly presented' to the state courts the 'substance' of his [or her] federal habeas corpus claim."); *Picard*, 404 U.S. at 276 (an applicant is required to "present the state courts with the same claim he [or she] urges upon the federal courts."); *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement.").

"[The] exhaustion of state remedies requires that petitioners 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (per curiam) (quotations omitted; citing *Picard*, 404 U.S. at 275). If a petitioner has not fully presented his or her federal claims in state court, the claims are barred in federal court and must be dismissed, unless the applicant can either show both good cause for his or her failure to present the claims in state court and actual prejudice as a result of the alleged constitutional violation or demonstrate that failure to review the claim would result in a fundamental miscarriage of

justice. *Coleman*, 501 U.S. at 750; *Keithley*, 43 F.3d at 1218; *Maynard v. Lockhart*, 981 F.2d 981, 984 (8th Cir. 1992); *Stanley v. Lockhart*, 941 F.2d 707, 709 (8th Cir. 1991).

## C. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defen[s]e." U.S. Const., amend. VI. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Thus, "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). A criminal defendant also has the right to the effective assistance of counsel on direct appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 482, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000) (citing *Penson v. Ohio*, 488 U.S. 75, 88-89, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988)); *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993) ("'A criminal defendant is entitled to effective assistance of counsel on first appeal as of right.' *Estes v. United States*, 883 F.2d 645, 648 (8th Cir. 1989)."). However, "[a]bsent some effect of challenged conduct on the reliability of the . . . process, the Sixth Amendment guarantee is generally not implicated." *Cronic*, 466 U.S. at 658 (citations omitted).

In order to establish a claim of ineffective assistance of counsel, Buenaventura must show that (1) the performance of his trial counsel and appellate counsel was constitutionally deficient, which requires a showing that his counsel's performance fell below an objective standard of reasonableness, and (2) the deficiency in his counsel's performance resulted in prejudice to his defense. *Strickland*, 466 U.S. at 687; *see also Wiggins*, 539 U.S. at 521; *Link v. Luebbers*, 469 F.3d 1197, 1202 (8th Cir. 2006); *Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir. 2006); *Middleton*, 455 F.3d at 846. If

Buenaventura makes an insufficient showing on one of the two components, the court is not required to address the other component. *Strickland*, 466 U.S. at 697.

The performance inquiry requires a determination of whether counsel's assistance was "reasonable considering all of the circumstances." *Strickland*, 466 U.S. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Therefore, a strong presumption exists that counsel's conduct "falls within the wide range of reasonable professional assistance." *Id.*; *see also Link*, 469 F.3d at 1202 (discussing the presumption); *Middleton*, 455 F.3d at 846 (same). Thus, "the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986) (citation omitted).

Under the prejudice prong, Buenaventura must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability, is a probability sufficient to undermine confidence in the outcome." *Id.* In other words, "the question is whether there is a reasonable probability that, absent those errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695. The court must consider the totality of the evidence when making the prejudice determination. *Strickland*, 466 U.S. at 695.

## V. DISCUSSION

### A. The Motion to Suppress

Buenaventura contends that the statements he gave to detectives in interviews on March 11, 2001 and March 15, 2001, should have been suppressed by the Iowa District Court. Buenaventura argues that the detectives' failure to inform him of his right to

consular notification was a violation of his Sixth Amendment right to counsel. Buenaventura also argues that he was denied effective assistance of appellate counsel on direct appeal because his appellate counsel failed to raise the Sixth Amendment issue on appeal. Lastly, he argues that the failure to inform him of his right to consular notification rendered his statements involuntary under Fifth Amendment standards.

### 1. Did the Failure to Notify Buenaventura of his Right to Consular Notification Violate his Sixth Amendment Right to Counsel?

#### a. Standard of Review

Because the question of whether Buenaventura's statements should have been suppressed is a legal issue, the applicable standard is 28 U.S.C. § 2254(d)(1), which provides that habeas corpus relief should be granted if the Iowa Courts' decision was "contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Applying these standards to the present case, the Court's inquiry must be whether the Iowa Courts reached a decision contrary to that reached by the United States Supreme Court on a question of law, or alternatively, whether the Iowa Courts correctly identified the applicable principles of federal law and then unreasonably applied that law to the facts of Buenaventura's claim. *See, e.g. Rousan*, 436 F.3d at 955-56; *Bucklew*, 436 F.3d at 1016; *Siers v. Weber*, 259 F.3d at 973.

#### b. The Merits

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e." U.S.CONST. amend. VI. Buenaventura asserts that the failure to inform him of his right to consular notification violated his right to counsel because he would have sought advice from the Philippine consulate had he been aware of that right. According to Buenaventura, he believed that the detectives would use the kind of police tactics used in the Philippines, meaning that they would beat him, if he did not give a statement. Buenaventura argues that if the detectives had informed him of his right to consular notification, the consulate

would have advised him to retain the services of an attorney before giving a statement. He testified that he would have followed this advice.

Article 36 of the Vienna Convention ("Article 36") does not provide a right to counsel. Article 36 provides for notification of detention, but it does not guarantee any advice, or indeed any correspondence whatsoever, from the consulate. "Article 36 does not guarantee defendants *any* assistance at all. The provision secures only a right of foreign nationals to have their consulate *informed* of their arrest or detention—not to have their consulate intervene, or to have law enforcement authorities cease their investigation pending any such notice or intervention." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 349, 126 S. Ct. 2669, 165 L. Ed. 2d 557 (2006).

The Iowa Court of Appeals addressed *Sanchez-Llamas* and determined on Buenaventura's post-conviction appeal, that:

> Accepting the principle that Buenaventura had an enforceable right to be informed that he could contact the Philippine consulate, his statements to the detectives would not have been suppressed. . . . The United States Supreme Court has stated that it is 'unnecessary to apply the exclusionary rule where other constitutional and statutory protections--many of them already enforced by the exclusionary rule--safeguard the same interests . . . advanced by Article 36. . . .
>
> Buenaventura was informed of his right to counsel. He was read his *Miranda* rights twice and at one point exercised his *Miranda* rights by requesting an attorney. Buenaventura's pastor repeatedly reminded Buenaventura that he could request an attorney. Buenaventura opted to waive his right to counsel. Buenaventura admitted at trial that he understood he could have a lawyer. Accordingly, we find the argument that Buenaventura's Sixth Amendment right to counsel was violated without merit[.] . . .

*Buenaventura*, No. 05-1493, 2006 WL 2419194, at *4 (citation omitted). Applying the deferential standard of review set forth in 28 U.S.C. § 2254(d)(1), the Court finds that the Iowa Court of Appeals did not unreasonably apply federal law in finding that the

detectives' failure to inform Buenaventura of his right to consular notification did not violate his Sixth Amendment right to counsel. Accordingly, Buenaventura is not entitled to relief on this ground.

Additionally, the Unites States Supreme Court has clearly established that a court should not suppress a defendant's statements solely because his or her right to consular notification was violated. In *Sanchez-Llamas*, police arrested the petitioner and read him his *Miranda* rights but did not inform him of his right to consular notification. *Sanchez-Llamas*, 548 U.S. at 339-40. During an interrogation, the petitioner made several incriminating statements about his involvement in the crime for which the police had arrested him. *Id.* at 340. He moved to suppress these statements based on the violation of his right to consular notification before trial; the trial court denied the motion. *Id.* After noting that the Vienna Convention does not provide a remedy for a violation of Article 36, the United States Supreme Court found it was unnecessary to apply the exclusionary rule to Article 36 violations when other constitutional and statutory provisions protect the same interests. *Id.* at 350. The Court concluded that "suppression is not an appropriate remedy for a violation of Article 36." *Id.* at 337.

At the time the Iowa Supreme Court decided Buenaventura's appeal, the United States Supreme Court had not considered the Article 36 issue. The Iowa Supreme Court, however, directed its attention to the decisions of several United States Circuit Courts of Appeals which held that the exclusionary rule simply did not apply to evidence obtained in violation of Article 36. *See United States v. Minjares-Alvarez*, 264 F.3d 980, 986 (10th Cir. 2001); *United States v. Jimenez-Nava*, 243 F.3d 192, 199-200 (5th Cir. 2001); *United States v. Chaparro-Alcantara*, 226 F.3d 616, 621-22 (7th Cir. 2000); *United States v. Lombera-Camorlinga*, 206 F.3d 882, 885-86 (9th Cir. 2000); *United States v. Li*, 206 F.3d 56, 66 (1st Cir. 2000). The Iowa Supreme Court quoted *Chaparro-Alcantara*:

> Application of the exclusionary rule is only appropriate when the Constitution or a statute requires it. There is no exclusionary rule generally applicable to international law

19

> violations. Indeed, the rights protected by the Vienna
> Convention are equivalent to rights protected by a statute
> because treaties and statutes have been held by the Supreme
> Court to be "on the same footing" with each other under the
> Constitution. Therefore, as in the case of statutes, the
> exclusionary rule is an appropriate sanction for a violation of
> a treaty provision only when the treaty provides for that
> remedy.

*Chaparro-Alcantara*, 226 F.3d at 621 (citations omitted). The Iowa Supreme Court agreed

with the reasoning in *Chaparro-Alcantara* and concluded that "in the absence of any

provision in the treaty itself for suppression of evidence obtained in violation of its

provisions, we refuse to create such a remedy." *Buenaventura*, 660 N.W.2d at 46. The

Iowa Supreme Court's conclusion was consistent with several Circuit Courts of Appeals

and proved to be consistent with the United States Supreme Court decision in *Sanchez-

Llamas*, decided after Buenaventura's direct appeal.[13] Again, applying the deferential

standard of review set forth in 28 U.S.C. § 2254(d)(1), the Court finds that the Iowa courts

did not unreasonably apply federal law in finding that the suppression of statements was

not an appropriate remedy for the detectives' failure to inform Buenaventura of his right

to consular notification.

### 2. *Did the Failure to Notify Buenaventura of his Right to Consular Notification Make his Statements Involuntary Under the Fifth Amendment?*

#### a. *Standard of Review*

Again, the applicable standard is 28 U.S.C. § 2254(d)(1). Thus, the Court's inquiry

must be whether the Iowa Courts reached a decision contrary to that reached by the United

States Supreme Court on a question of law, or alternatively, whether the Iowa Courts

correctly identified the applicable principles of federal law and then unreasonably applied

---

[13] In addition to considering Sanchez-Llamas in determining that Buenaventura's
Sixth Amendment right to counsel was not violated, the Iowa Court of Appeals also relied
on the Iowa Supreme Court's conclusion that "'the exclusionary rule simply does not apply
to evidence obtained in violation of Article 36.'" *Buenaventura*, No. 05-1493, 2006 WL
2419194, at *4 (quoting *Buenaventura*, 660 N.W.2d at 45).

that law to the facts of Buenaventura's claim. *See, e.g. Rousan*, 436 F.3d at 955-56;
*Bucklew*, 436 F.3d at 1016; *Siers*, 259 F.3d at 973.

### b. The Merits

Similar to his Sixth Amendment argument, Buenaventura argues in his brief that his:

> knowledge of police tactics and behavior in [the] Philippines
> impacted upon and colored his misunderstanding of this
> country's constitutional limits upon police activity. . . . Given
> [Buenaventura's] perceptions of police actions in [his] native
> land and his recent immigration to this county and lack of
> police contact in this county, it is clear from [the] evidence
> that [he] did not fully understand the rights read to him by
> police. Furthermore, [Buenaventura's] waiver of those rights
> and his subsequent statements to the police were not knowing
> and intelligently made.

(*See* Buenaventura's Brief at 9.)

"The Self-Incrimination Clause of the Fifth Amendment guarantees that no person 'shall be compelled in any criminal case to be a witness against himself.'" *Withrow v. Williams*, 507 U.S. 680, 688, 113 S. Ct. 1745, 1751, 123 L. Ed. 2d 407 (1993) (quoting U.S. CONST. amend. V). The Clause bars the introduction of involuntary confessions made in response to custodial interrogations. *Id.* In order to determine whether a statement was voluntary, a court must look to the totality of the circumstances of the interrogation. *Id.* at 693; *see also Haynes v. State of Washington*, 373 U.S. 503, 513, 83 S. Ct. 1336, 10 L. Ed. 2d 513 (1963) ("[A] confession obtained by police through the use of threats is violative of due process and . . . 'the question in each case is whether the defendant's will was overborne at the time he confessed.' 'In short, the true test of admissibility is that the confession is made freely, voluntarily, and without compulsion or inducement of any sort.' And, of course, whether the confession was obtained by coercion of improper inducement can be determined only by an examination of all of the attendant circumstances." (quotations and citations omitted)). The factors to consider when determining the voluntariness of a statement include: the degree of police coercion, the length, location,

21

and continuity of the interrogation, the maturity, education, physical condition, and mental condition of the defendant, and whether the police informed the defendant of his or her rights to remain silent and to have counsel present. *Id.* at 693-94. While the United States Supreme Court rejected the idea that an Article 36 violation should automatically result in suppression, the Supreme Court did state that "[a] defendant can raise an Article 36 claim as part of a broader challenge to the voluntariness of his statements to police." *Sanchez-Llamas*, 548 U.S. at 350. Therefore, a violation of Article 36 can be another factor in a court's voluntariness determination. A court must weigh all of the circumstances when determining voluntariness. *Williams*, 507 U.S. at 693.

In determining whether Buenaventura's statements were voluntary, the Iowa Supreme Court first noted that "'statements are voluntary if they were the product of an essentially free and unconstrained choice, made by the defendant whose will was not overborne or whose capacity for self-determination was not critically impaired.'" *Buenaventura*, 660 N.W.2d at 46-47 (quoting *State v. Payton*, 481 N.W.2d 325, 328 (Iowa 1992)). In making that determination, the Iowa Supreme Court considered the following factors:

> the defendant's age; the level of the defendant's prior experiences with law enforcement; whether the defendant was intoxicated at the time of the statement; whether the defendant was provided *Miranda* warnings; the intellectual capacity of the defendant; whether officers acted in a deceptive manner; whether the defendant appeared to understand and respond to questions; the length of time of the detention and interview; the defendant's physical and emotional reaction to the interrogation; and wether the defendant was subjected to any physical punishment such as the deprivation of food or sleep.

*Buenaventura*, 660 N.W.2d at 47 (quoting *State v. Smith*, 546 N.W.2d 916, 926 (Iowa 1996)). Applying those factors, the Iowa Supreme Court concluded that:

> The record in this case shows that Buenaventura was twenty-six years old at the time of his interrogation. He was college educated, employed in the United States, and understood

English. Buenaventura points to no deceptive conduct by the police, nor does he claim they used physical force to coerce statements from him. . . . The police gave Buenaventura *Miranda* warnings on both occasions, and he waived his rights both times. The defendant does not claim the *Miranda* warnings given to him were incomplete or that they were given in an untimely manner. Moreover, he admitted at trial that he understood he could have a lawyer. . . . And, despite his failure to confess, he concedes he was not beaten or tortured, nor did the police threaten any physical violence. To the contrary, they gave him food and pop and let him use the bathroom. Based on our review of the circumstances of Buenaventura's questioning and the relevant factors, we conclude his statements were made voluntarily, a product of his free will, unburdened by coercion. It follows, then, that the defendant's constitutional rights were not violated and, consequently, there is no constitutional basis for suppression of his statements.

*Buenaventura*, 660 N.W.2d at 47.

The factors overwhelmingly weigh in favor of voluntariness. The fact that the detectives did not inform Buenaventura that he had a right to consular notification is only one factor that weighs against the voluntariness of his statements. All of the other factors weigh in favor of voluntariness. It is particularly pertinent that Buenaventura was repeatedly advised to retain the services of an attorney, that he requested an attorney at the end of his first interview, and that he deliberately waived his right to an attorney at the start of the next interview. The detectives' failure to inform Buenaventura of his right to consular notification is a factor in determining the voluntariness of his statements, but it is only one factor, and the other factors outweigh it. Applying the deferential standard of review set forth in 28 U.S.C. § 2254(d)(1), the Court finds that the Iowa Supreme Court did not unreasonably apply federal law in finding that Buenaventura's statements to detectives were voluntary and his Fifth Amendment rights were not violated.

### 3. Was Buenaventura Denied Effective Assistance of Appellate Counsel?

In order to establish a claim of ineffective assistance of counsel, Buenaventura must show that (1) the performance of his trial counsel and appellate counsel was constitutionally deficient, which requires a showing that his counsel's performance fell below an objective standard of reasonableness, and (2) the deficiency in his counsel's performance resulted in prejudice to his defense. *Strickland*, 466 U.S. at 687; *see also Wiggins*, 539 U.S. at 521; *Link*, 469 F.3d at 1202; *Winfield*, 460 F.3d at 1033; *Middleton*, 455 F.3d at 846. If Buenaventura makes an insufficient showing on one of the two components, the court is not required to address the other component. *Strickland*, 466 U.S. at 697.

Buenaventura offers no evidence that his appellate counsel's representation was unreasonable under prevailing professional norms or that appellate counsel's decision not to argue that his Sixth Amendment right to counsel was violated amounted to unsound strategy. *See Kimmelman*, 477 U.S. at 381 ("[T]he defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."). Having found Buenaventura's argument that his Sixth Amendment right to counsel was violated to be without merit, the Iowa Court of Appeals further determined that "appellate counsel was not ineffective for failing to raise this issue. Appellate counsel is not required to raise a meritless claim. Therefore, appellate counsel did not breach a duty to Buenaventura." *Buenaventura*, No. 05-1493, 2006 WL 2419194, at *4 (citation omitted). Thus, the Iowa Court of Appeals found that Buenaventura's appellate counsel provided reasonable representation and employed sound legal strategy. *See Kimmelman*, 477 U.S. at 381. Furthermore, finding no merit to the Sixth Amendment claim, Buenaventura was not prejudiced by his appellate counsel's representation. *See Strickland*, 466 U.S. at 695 (the question under the prejudice prong is "whether there is a reasonable probability that, absent those errors, the fact finder would have had a reasonable doubt respecting guilt."). Applying the deferential

standard of review set forth in 28 U.S.C. § 2254(d)(1), the Court finds that the Iowa Court of Appeals did not unreasonably apply *Strickland* when it concluded that Buenaventura's appellate counsel did not provide deficient assistance. Thus, Buenaventura is not entitled to relief on this ground.

## B. Sufficiency of the Evidence

In his Petition, Buenaventura argues that he was denied effective assistance of appellate counsel because his counsel failed to argue on direct appeal that there was insufficient evidence to support a charge of murder based on the State failing to present evidence corroborating his statements. Buenaventura's brief, however, does not mention corroboration,[14] but argues instead that there was insufficient evidence to support a charge of murder because "the State did not bring forth facts that would support premeditation or malice aforethought [sic]."[15] Buenaventura argued premeditation and malice aforethought on direct appeal, and he argued corroboration on post-conviction, satisfying the exhaustion requirement. *See Vasquez*, 474 U.S. at 257 (A petitioner exhausts his or her state remedies when he or she has provided the highest state court with a full and fair opportunity to consider all the claims before presenting them to the federal court.).

### 1. Was There Enough Evidence to Corroborate Buenaventura's Statements?

#### a. Standard of Review

A sufficiency of the evidence claim is a claim of factual error. Therefore, the applicable standard that applies is 28 U.S.C. § 2254(d)(2): whether the Iowa Courts' decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The state court findings of fact are presumed to be correct. *Beck*, 257 F.3d at 901 (citing 28 U.S.C.

---

[14] Buenaventura does briefly state that "the prosecution did not provide any eye witness testimony." *See* Buenaventura's Brief at 12. This may be the remnant of his corroboration argument.

[15] *See* Buenaventura's Brief at 12.

§ 2254(e)(1)). The burden is on the petitioner to rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979) (citation omitted).

### b.    *The Merits*

Iowa Code § 2.21(4) states that "[t]he confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the defendant committed the offense." Buenaventura argues that the State failed to corroborate Buenaventura's statements with other evidence. More specifically, Buenaventura argues that the only other evidence the State offered, aside from his statements, was circumstantial. Buenaventura's argument that the State should have produced more direct evidence is without merit. Under Iowa law, "direct and circumstantial evidence are equally probative." *State v. McGuire*, 572 N.W.2d 545, 547 (Iowa 1997). A charge can go to the jury even if it is based solely on circumstantial evidence; the real question is whether the quality of the evidence raises a fair inference of guilt, rather than suspicion, speculation, or conjecture. *State v. Horrell*, 151 N.W.2d 526, 529 (Iowa 1967).

The Iowa Court of Appeals determined that there was "sufficient corroborating evidence to support a jury's inference of guilt." *Buenaventura*, No. 05-1493, 2006 WL 2419194, at *6. In making its determination, the Iowa Court of Appeals relied on the following evidence: (1) in Buenaventura's first statement to detectives, he denied renting a carpet cleaner to clean blood from the carpet; (2) after learning that the detectives knew he rented a carpet cleaner, Buenaventura admitted that he cleaned blood from the carpet; (3) Buenaventura admitted using a vacuum and detergent to clean up Sally's blood; (4) neighbors reported that they heard a man and a woman yelling on the night Sally went missing; (5) Buenaventura disapproved of Sally's religion and the person she was dating;

and (6) Buenaventura wanted Sally to date a friend of his in the Philippines. *Id*. Applying the deferential standard of review set forth in 28 U.S.C. § 2254(d)(2), the Court finds that the Iowa Court of Appeals' decision that the circumstantial evidence was sufficiently corroborative to support the jury's inference of guilt was not an unreasonable determination of the facts. Therefore, Buenaventura is not entitled to relief on this issue.

### c. *Ineffective Assistance of Counsel*

In order to establish a claim of ineffective assistance of counsel, Buenaventura must show that (1) the performance of his trial counsel and appellate counsel was constitutionally deficient, which requires a showing that his counsel's performance fell below an objective standard of reasonableness, and (2) the deficiency in his counsel's performance resulted in prejudice to his defense. *Strickland*, 466 U.S. at 687; *see also Wiggins*, 539 U.S. at 521; *Link*, 469 F.3d at 1202; *Winfield*, 460 F.3d at 1033; *Middleton*, 455 F.3d at 846. If Buenaventura makes an insufficient showing on one of the two components, the court is not required to address the other component. *Strickland*, 466 U.S. at 697.

In his brief, Buenaventura offered no argument or evidence that his appellate counsel's representation was unreasonable under prevailing professional norms or that appellate counsel's decision not raise the issue of corroborating evidence was unsound strategy. *See Kimmelman*, 477 U.S. at 381 ("[T]he defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."). Furthermore, the Iowa Court of Appeals determined that Buenaventura's appellate counsel was not ineffective for not raising the argument that the State's failed to present evidence corroborating his statements. Specifically, the Iowa Court of Appeals found that Buenaventura's appellate counsel considered this issue and stated:

> Even the admissions were corroborated by all the other evidence the State presented, including his rental of a carpet cleaner, the finding of the blood in the carpet cleaner, the

> presence of all the carpet cleaning agents in the house, the
> blood on the carpet in the house or apartment.

*Buenaventura*, No. 05-1493, 2006 WL 2419194, at *6. The Iowa Court of Appeals concluded that Buenaventura's appellate counsel "did not believe that a lack of corroborating evidence was a 'legitimate claim.' Accordingly, we find that appellate counsel considered the argument and was not ineffective for failing to raise this argument." *Id.* Thus, the Iowa Court of Appeals found that Buenaventura's appellate counsel provided reasonable representation, employed sound legal strategy, and did not prejudice Buenaventura's defense. *See Kimmelman*, 477 U.S. at 381; *Strickland*, 466 U.S. at 695. Applying the deferential standard of review set forth in 28 U.S.C. § 2254(d)(1), the Court finds that the Iowa Court of Appeals did not unreasonably apply *Strickland* when it concluded that Buenaventura's appellate counsel did not provide deficient assistance. Thus, Buenaventura is not entitled to relief on this ground.

### 2. Did the State Submit Sufficient Evidence of Premeditation or Malice Aforethought to Support a Verdict of Murder?

#### a. Standard of Review

Again, the applicable standard that applies is 28 U.S.C. § 2254(d)(2). This standard requires a determination of whether the Iowa Courts' decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

#### b. The Merits

In his brief, Buenaventura argues that there was not sufficient evidence of premeditation or malice aforethought to support a verdict of murder. Specifically, Buenaventura argues that:

the prosecution did not provide any eye witness testimony. The State barely provided any information on why Mr. Buenaventura would have any reason to commit this crime. Furthermore, the State did not bring forth facts that would support premeditation or malice aforethought [sic]. The instrument used in the crime was never found or admitted into evidence. There is no evidence that reflects that [the] person committing this crime confronted the victim with a dangerous weapon before the crime occurred.

(*See* Buenaventura's Brief at 12.)

### (1)    *Premeditation*

First-degree murder requires that the murderer kill willfully, deliberately, and with premeditation. Iowa Code § 707.2(1). Buenaventura argues that the State did not provide sufficient evidence of premeditation. Premeditation does not need to exist for a particular length of time before the killing. *State v. Gilroy*, 199 N.W.2d 63, 66 (Iowa 1972). Premeditation can be shown in one of three ways: (1) evidence of planning activity; (2) evidence of motive; or (3) the nature of the killing. *State v. Khouri*, 503 N.W.2d 393, 395 (Iowa 1993).

The Iowa Supreme Court concluded that there was sufficient evidence of premeditation to warrant submission of the first-degree murder charge. The Iowa Supreme Court summarized this evidence as follows:

> The evidence showed that Buenaventura did not have a smooth relationship with his sister-in-law. Buenaventura, a Catholic, was quite upset with Shirley and [Sally's] involvement with the Baptist church in Cedar Rapids. He was particularly unhappy that [Sally] had become romantically involved with the assistant pastor at the church, a situation that frustrated his desire to line up [Sally] with a male friend in the Philippines. The tense relationship between Buenaventura and [Sally] was not confined to their household as evidenced by the church pastor's testimony that he had questioned Buenaventura during the search for [Sally] as to whether he and [Sally] had "had a little spat." Finally, there was evidence that Buenaventura had

confided to a cellmate "that his sister-in-law used to always be
in him and his wife's business."

We think the cumulative strength of this evidence would
support an inference that [Buenaventura], dissatisfied with
[Sally's] behavior, choices, and meddling, thought about
killing her before undertaking to accomplish that act. The fact
that neighbors heard a woman screaming and a man yelling for
two to three minutes before the clamor stopped indicates that
Buenaventura had an opportunity to think about what he was
doing before he struck the murderous blows. . . .

Premeditation was also shown by the nature of the crime and
[Buenaventura's] actions afterwards. As described above,
[Sally] was brutally beaten. Some of her injuries indicated that
she had tried to defend herself from the attack. Buenaventura
hid the victim's body and then tried to remove the bloody
evidence of the murder. These circumstances, especially when
combined with Buenaventura's ill feelings toward his sister-in-
law, indicate that what happened was no accident or defensive
reaction by [Buenaventura]; it was something [he] thought
about before inflicting the fatal blows.

*Buenaventura*, 660 N.W.2d at 48-49. Considering the amount of evidence the State

submitted showing premeditation, and applying the deferential standard of review set forth

in 28 U.S.C. § 2254(d)(2), the Court finds that the Iowa Supreme Court's conclusion that

there was sufficient evidence of premeditation to warrant submission of the first-degree

murder charge was not an unreasonable determination of the facts. Therefore,

Buenaventura is not entitled to relief on this issue.

### (2)    *Malice Aforethought*

According to Iowa Code § 707.1, "[a] person who kills another person with malice

aforethought either express or implied commits murder." Malice aforethought is defined

in Iowa as "a fixed purpose or design to do physical harm to another that exists before the

act is committed." *State v. Myers*, 653 N.W.2d 574, 579 (Iowa 2002). There is no

minimum requirement for the amount of time the malice aforethought must exist prior to

the crime. *Id.* The use of a deadly and dangerous weapon raises an inference of malice. *State v. Reeves*, 636 N.W.2d 22, 25-26 (Iowa 2001). The State may also use the prior relationship of the parties to show malice aforethought. *State v. Kellogg*, 263 N.W.2d 539, 542 (Iowa 1978). For example, evidence of bad feelings or quarrels between a defendant and victim are circumstances that may be used to support a finding of malice aforethought. *Id.*

The Iowa Supreme Court determined that the circumstances in this case, provided "ample evidence from which a jury could find that the defendant acted with a fixed purpose or design to do physical harm to [Sally]." *Buenaventura*, 660 N.W.2d at 50. Thus, the Iowa Supreme Court concluded that there was sufficient evidence of malice aforethought to support submission of the first-degree murder charge. The Iowa Supreme Court discussed the evidence which supported its conclusion as follows:

> We have already reviewed the evidence showing the poor relationship between [Buenaventura] and the victim that existed before the victim's murder. In addition, autopsy evidence introduced at trial showed that [Sally's] fatal head injuries were inflicted with a very hard object having a curved edge. The murderer used this instrument with "severe force" to inflict five blows to [Sally's] head, causing several lacerations to the victim's scalp, as well as multiple skull fractures that resulted in her death. Clearly, the weapon used, though unidentified and never found, was deadly. Moreover, the killer did not stop at bashing in victim's head; he also beat her body, causing multiple rib fractures, a perforated lung, hemorrhaging around the intestines, and a lacerated liver.

*Id.* at 49-50. Again, considering the amount of evidence the State submitted showing malice aforethought, and applying the deferential standard of review set forth in 28 U.S.C. § 2254(d)(2), the Court finds that the Iowa Supreme Court's conclusion that there was sufficient evidence of malice aforethought to warrant submission of the first-degree murder charge was not an unreasonable determination of the facts. Therefore, Buenaventura is not entitled to relief on this issue.

## C. Ineffective Assistance of Appellate Counsel--Exclusion of Harassment and Vandalism Evidence

At trial, Buenaventura wanted to offer evidence that Sally had been the victim of various acts of vandalism and harassment. He wanted to offer this evidence to show that "other people may have killed the victim."[16] The Iowa District Court ruled that the evidence could not be admitted on grounds of irrelevance and hearsay. On direct appeal, Buenaventura argued that the Iowa District Court's rulings were in error, but he did not frame the issue in constitutional terms. The Iowa Supreme Court found no error in the Iowa District Court's rulings. Specifically, the Iowa Supreme Court concluded that:

> [T]he trial court did not abuse its discretion in concluding that the incidents of vandalism did not have the tendency to establish that the victim was murdered by someone other than [Buenaventura]. Therefore the [Iowa District C]ourt did not err in excluding this irrelevant evidence. *See* Iowa R. Evid. 5.402 ("Evidence which is not relevant is not admissible.").

*Buenaventura*, 660 N.W.2d at 51. The Iowa Supreme Court also concluded that the Iowa District Court properly found evidence of statements made by Sally regarding harassment at work were properly excluded as inadmissible hearsay. *Id.* Specifically, the Iowa Supreme Court found that:

> [Buenaventura] argues the victim's alleged statements were "evidence that she had lived in fear of such harassments and had made such statements to others to explain her emotional state." The weakness in this argument is that neither the victim's emotional state nor her state of mind is relevant in this case. The sole purpose and relevancy of this testimony . . . is to prove the incidents of harassment actually occurred, thereby supporting Buenaventura's defense that the person pestering the victim also murdered her. The trial court correctly ruled, however, that [Sally's] statements are inadmissible hearsay when offered for this purpose.

---

[16] *See* Buenaventura's Petition at 5.

*Id.* On post-conviction relief, Buenaventura argued that his appellate counsel was ineffective by failing to raise the issue of the excluded evidence as a constitutional due process claim.

In his petition, Buenaventura argues that he was denied effective assistance of appellate counsel "regarding the [Iowa] District Court's exclusion of evidence pertaining to previous instances of harassment and vandalism of the victim at trial."[17] In his brief, however, Buenaventura argues that "[t]he cumulative effect of denying officers and other witnesses to testify about prior vandalism to [Sally's] vehicle and to prior sexual harassment . . . at work denied [Buenaventura] fundamental fairness and fair play and therefore required a new trial. [Buenaventura] was denied the ability to show that someone else had reason to kill Sally."[18] Because Buenaventura's petition claims that his appellate counsel was ineffective for failing to raise the exclusion of evidence issue on a constitutional ground, and his brief frames the argument vaguely as a due process issue and neglects to discuss ineffective assistance of counsel, the State argues that Buenaventura procedurally defaulted his claim because the due process issue was not fairly presented to the State Courts as a federal constitutional claim.

### 1.    *Exhaustion/Procedural Default*

The State argues that the due process claim is procedurally defaulted because Buenaventura did not fairly present it as a due process issue at any level of State court, but rather presented only an ineffective assistance of counsel argument. A petitioner must fairly present "not only the facts, but also the [legal] substance of his federal habeas corpus claim" in State court. *Barrett v. Acevedo*, 169 F.3d 1155, 1161 (8th Cir. 1999). Buenaventura is now barred from bringing this claim purely on a due process ground because he did not bring a due process claim in State court. He has not met either of the

---

[17] *See* Buenaventura's Petition at 5.

[18] *See* Buenaventura's Brief at 15-16.

*Coleman* exceptions; he has not shown both good cause for his failure to present the due process claim in state court and actual prejudice as a result, nor has he demonstrated that failure to review the claim would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750.

The State points to Buenaventura's Brief to show that this claim is procedurally defaulted because, in his Brief, Buenaventura does not address ineffective assistance of counsel but rather attempts to make a due process argument. It is true that Buenaventura's Brief does not discuss ineffective assistance of counsel; in fact, the Brief barely discusses any legal theory at all. However, Buenaventura's petition lists ineffective assistance of counsel as the ground for bringing this claim. Therefore, the Court will address this claim as an ineffective assistance of counsel claim, but not as a due process claim. The due process claim is procedurally defaulted.

### 2. Was Buenaventura Denied Effective Assistance of Appellate Counsel when Appellate Counsel Failed to Frame the Exclusion of Evidence Issue as a Due Process Issue?

In order to establish a claim of ineffective assistance of counsel, Buenaventura must show that (1) the performance of his trial counsel and appellate counsel was constitutionally deficient, which requires a showing that his counsel's performance fell below an objective standard of reasonableness, and (2) the deficiency in his counsel's performance resulted in prejudice to his defense. *Strickland*, 466 U.S. at 687; *see also Wiggins*, 539 U.S. at 521; *Link*, 469 F.3d at 1202; *Winfield*, 460 F.3d at 1033; *Middleton*, 455 F.3d at 846.

Buenaventura has not shown that his appellate counsel's performance fell below the standard of reasonableness. The Iowa Court of Appeals noted that Buenaventura's appellate counsel considered the due process argument and rejected it, believing it to be meritless. *Buenaventura*, No. 05-1493, 2006 WL 2419194, at *5. Instead, appellate counsel brought the claim as an evidentiary issue, which was a strategic decision. "A claim of ineffective assistance cannot be based on decisions that relate to a reasoned choice

of trial strategy, even when it later may be shown improvident." *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995) (citing *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir. 1985)). Buenaventura has presented no evidence that his appellate counsel's conduct fell below an objective standard of reasonableness, and so has not overcome the presumption that his counsel's conduct was reasonable. *See Strickland*, 466 U.S. at 689.

Buenaventura also has not shown that any deficiencies in his appellate counsel's performance prejudiced his defense. He argues that the error was not harmless because the evidence of vandalism and harassment could have created a reasonable doubt about his guilt. However, his argument is not that his trial counsel was ineffective in getting the evidence admitted, but that his appellate counsel was ineffective by failing to frame this deficiency as a due process claim. Therefore, the question the Court must ask is whether the failure to frame the evidentiary issue as a due process claim resulted in prejudice to his defense. Buenaventura's appellate counsel did raise this issue on direct appeal as a state evidentiary issue. The Iowa Supreme Court reviewed his argument and affirmed the Iowa District Court. Buenaventura has not established a reasonable probability that the result would have been any different had the argument been framed in the context of a federal right. While due process guarantees defendants an opportunity to present a complete defense, "the exclusion of critical evidence favorable to a criminal defendant does not necessarily deny him a fair opportunity to defend against the State's accusations." *Guinn v. Kemna*, 489 F.3d 351, 358 (8th Cir. 2007) (citations omitted); *see also Holmes v. South Carolina*, 547 U.S. 319, 327 (2006) ("Evidence tending to show the commission by another person of the crime charged may be introduced by the accused when it is inconsistent with, and raises a reasonable doubt of, his or her own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded.") (citations omitted). The evidence that Buenaventura sought to admit was hardly "critical evidence;" in fact, the Iowa Supreme Court considered it "quite weak." *State v. Buenaventura*, 660 N.W.2d at 51. Buenaventura has

failed to show that his appellate counsel's failure to raise the evidentiary issue as a due process issue resulted in prejudice. Thus, applying the deferential standard of review set forth in 28 U.S.C. § 2254(d)(1), the Court finds that the Iowa Court of Appeals did not unreasonably apply *Strickland* when it concluded that Buenaventura's appellate counsel did not provide deficient assistance. Thus, Buenaventura is not entitled to relief on this ground.

### D. Ineffective Assistance of Counsel--Failure to Investigate

Buenaventura's final argument is that his trial counsel was ineffective in two ways: first, by failing to have the rape kit taken from Sally tested, and second, by failing to investigate statements made in a letter by fellow inmate Mark Rambo ("Rambo"). Rambo's letter indicated that he and another inmate would be willing to testify to Buenaventura's innocence. Buenaventura argues that the rape kit and the inmates' testimonies could have provided exculpatory evidence. This argument was made for the first time on post-conviction in the Iowa Court of Appeals.

In order to establish a claim of ineffective assistance of counsel, Buenaventura must show that (1) the performance of his trial counsel and appellate counsel was constitutionally deficient, which requires a showing that his counsel's performance fell below an objective standard of reasonableness, and (2) the deficiency in his counsel's performance resulted in prejudice to his defense. *Strickland*, 466 U.S. at 687; *see also Wiggins*, 539 U.S. at 521; *Link*, 469 F.3d at 1202; *Winfield*, 460 F.3d at 1033; *Middleton*, 455 F.3d at 846.

Buenaventura has not shown that his trial counsel's performance in not investigating the rape kit or Rambo's letter fell below the standard of reasonableness. His counsel testified that the reason they did not have the rape kit tested was because the pathologist indicated that there was no evidence that Sally had been sexually assaulted. In addition, Buenaventura testified that his attorneys told him that they did not want to have the rape kit tested in case it implicated him (despite his insistence that it would not). Finally,

Buenaventura's counsel was able to use the fact that the rape kit was never tested as support for their theory during trial that the police were so focused on Buenaventura that they never investigated other suspects. This approach was a strategic choice. His counsel also testified that they did not investigate Rambo's letter because they were reluctant to call inmates as witnesses, since the inmate they originally called changed his story between his deposition and trial.[19] This choice was strategic because Buenaventura's counsel did not want to risk bringing in another inmate that might recant his story and inculpate Buenaventura. Additionally, Rambo's letter was dated December 17, 2001, the day that the jury returned its verdict. To use Rambo's statements, Buenaventura's counsel would have had to move for a new trial. His counsel did not believe that the letter from Rambo met the newly discovered evidence standard for a new trial. Since there is a presumption that counsel's conduct is reasonable, Buenaventura has the burden of proving that his counsel's performance was unreasonable and that "the challenged action was not sound strategy." *Kimmelman*, 477 U.S. at 381. In his Brief, Buenaventura states that the rape kit "*could have* provided exculpatory evidence."[20] He also claims that Rambo's testimony is important in light of the State's witness, Herlie Johnson, who testified that Buenaventura admitted to killing Sally. These arguments fail to show how counsel's performance was unreasonable or not sound strategy. The Iowa Court of Appeals found that Buenaventura's counsel made "informed decision[s that did] not rise to ineffective assistance." *Buenaventura*, No. 05-1493, 2006 WL 2419194, at *8.

Buenaventura also has not shown that any deficiencies in his trial counsel's performance prejudiced his defense. The Iowa Court of Appeals found that Buenaventura failed to show that the outcome would have been different if the rape kit had been tested.

---

[19] Trial counsel called Lamel Lamont Brandon because he stated in his deposition that he had never heard Buenaventura admit to killing Sally. At trial, Brandon changed his testimony and claimed that he had, indeed, heard Buenaventura admit to killing Sally.

[20] *See* Buenaventura's Brief at 16 (emphasis added).

Again, Buenaventura's vague statement that the rape kit "could have" exculpated him is insufficient to meet his burden of proof. Additionally, Buenaventura's trial counsel did not believe that the letter from Rambo met the newly discovered evidence standard for a new trial. Buenaventura has failed to show that this letter could have led to a new trial, let alone that Rambo's statements would have changed the result of the trial. The Iowa Court of Appeals found that Buenaventura's failure to investigate the rape kit and Rambo's letter did not prejudice Buenaventura. *See Buenaventura*, No. 05-1493, 2006 WL 2419194, at **6-8. Applying the deferential standard of review set forth in 28 U.S.C. § 2254(d)(1), the Court finds that the Iowa Court of Appeals did not unreasonably apply *Strickland* when it concluded that Buenaventura's appellate counsel did not provide deficient assistance. Thus, Buenaventura is not entitled to relief on this ground.

## VI. CERTIFICATE OF APPEALABILITY

In a habeas proceeding before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. *See* 28 U.S.C. § 2253(a). Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. *See* 28 U.S.C. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and FED. R. APP. P. 22(b). *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may only issue if an applicant has made a substantial showing of the denial of a constitutional right. *See Miller-El*, 537 U.S. at 335-36; *Winfield*, 460 F.3d at 1040 (8th Cir. 2006); *Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006); *Williams v. Bruton*, 299 F.3d 981, 982 (8th Cir. 2002); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Winfield*, 460 F.3d at 1040; *Cox*, 133 F.3d at 569 (citation omitted); *see also*

*Tennard v. Dretke,* 542 U.S. 274, 276, 124 S. Ct. 2562, 159 L. Ed. 2d (2004) (reiterating standard); *Miller-El,* 537 U.S. at 335-36 (same).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El,* 537 U.S. at 338 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [applicant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack,* 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the Court finds that Buenaventura failed to make the requisite "substantial showing" with respect to the claims that he raised in his application pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Because there is no debatable question as to the resolution of this case, an appeal is not warranted. Accordingly, the Court recommends that a certificate of appealability pursuant to 28 U.S.C. § 2253 not be granted.

## VII. CONCLUSION

Buenaventura is not entitled to relief pursuant to 28 U.S.C. § 2254. The Iowa courts' adjudication of Buenaventura's claims neither resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law, nor resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, the Court recommends that Buenaventura's application for a writ of habeas corpus be denied. The Court also recommends that a certificate of appealability be denied.

## VIII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the District Court **DENY** Buenaventura's application for a writ of habeas corpus (docket number 5) and **DENY** a certificate of appealability.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1)(B), that within ten (10) days after being served with a copy of these proposed findings and recommendations, any party may serve and file written objections with the District Court.

DATED this 29th day of August, 2008.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA